IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWIN SOTO-SANTANA, et al., | : | Civ. No. 3:23-CV-1819 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Magistrate Judge Bloom) |
| | : | |
| STEPHAN WENGEN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction

This case comes before us for consideration of a motion to dismiss filed by the defendant, Stephan Wengen. (Doc. 11). The plaintiffs, Edwin Soto-Santana and Yanahira Soto, filed this action against Wengen, an officer with the Wilkes-Barre City Police Department, alleging claims of false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 and state law. (Doc. 1). These claims arose from the plaintiffs' January 2023 arrest for defiant trespass after the charges against them were ultimately dismissed. (*Id.*).

Wengen has now moved to dismiss the complaint, arguing that the plaintiffs' claims against him fail as a matter of law. (Doc. 11). After consideration, we agree and will grant the defendant's motion.

## II.   <u>Background</u>

The complaint alleges that the plaintiffs, who are mother and son, resided at 250 Carey Avenue in Wilkes-Barre, Pennsylvania, in a ground floor apartment. (Doc. 1 ¶¶ 12-13). The building was owned by a Mr. Elbattah. (*Id.* ¶ 14). In July of 2022, Ms. Soto informed Mr. Elbattah that there was a plumbing issue in the building, but Mr. Elbattah did not repair the issue. (*Id.* ¶¶ 16-17). After several months, Ms. Soto contacted the City of Wilkes-Barre in December of 2022 to inform them that the issue had still not been repaired. (*Id.* ¶ 18). After Ms. Soto contacted the City, the City sent Dan Kratz, a code enforcement officer, to inspect the property. (*Id.* ¶ 19). Upon inspection, Mr. Kratz determined that the property was unfit for human habitation due to the plumbing issue reported by Ms. Soto and an HVAC issue in the second-floor apartment. (*Id.* ¶¶ 20-21). Thus, Mr. Kratz posted a notice at the property that the building was unfit for human habitation. (*Id.* ¶ 21).

Following the notice that their apartment was unfit for human habitation, the plaintiffs began residing with a friend of their pastor. (Doc. 1 ¶ 27). Mr. Elbattah then began making repairs on the Carey Avenue property. (*Id.* ¶ 23). The complaint avers that on January 9, 2023,

while Mr. Elbattah was making repairs at the property, he gave the plaintiffs permission to be present in the apartment because most of their belongings were there. (*Id.* ¶¶ 24-26). Around 6:00 p.m., officers from the Wilkes-Barre City Police Department, including Defendant Wengen, arrived at the property after receiving a report that someone was trespassing at the Carey Avenue property. (*Id.* ¶¶ 27-28). The complaint asserts that a neighbor informed the officers that Ms. Soto had been residing in the apartment overnight despite the building being deemed uninhabitable. (*Id.* ¶ 33).

Officer Wengen attempted to contact Ms. Soto at the apartment, but she did not answer the door, so a neighbor gave Wengen Mr. Elbattah's phone number and Wengen called him to the apartment. (Doc. 1 ¶¶ 36-40). After Mr. Elbattah arrived at the property, Wengen was able to contact the plaintiffs, at which time Ms. Soto allegedly told Wengen that although she knew the building was uninhabitable, she "felt she could stay there because her apartment was being fixed." (*Id.* ¶ 43). The complaint further asserts that Mr. Elbattah informed Wengen that he had given the plaintiffs permission to be at the property that day while he made repairs. (*Id.* ¶ 44).

Ultimately, Wengen arrested the plaintiffs and charged them with defiant trespass. (Doc. 1 ¶ 45). The plaintiffs were released the same evening after being processed by the Wilkes-Barre Police. (*Id.* ¶ 54). The charges against the plaintiffs were dismissed after Wengen failed to appear at a preliminary hearing on March 8, 2023. (*Id.* ¶ 64).

Based on these assertions, the plaintiffs filed this action against Wengen, alleging claims of false arrest, false imprisonment, and malicious prosecution. (Doc. 1). They assert these claims under § 1983 and state law. (*Id.*). For his part, Defendant Wengen has filed a motion to dismiss the claims against him, arguing that the plaintiffs' claims fail as a matter of law because he had probable cause to arrest them for defiant trespass. (Doc. 11). This motion is fully briefed and is ripe for resolution. (Docs. 12-14). After consideration, we conclude that the plaintiffs' claims fail as a matter of law. Accordingly, we will grant the defendant's motion to dismiss.

III.   <u>Discussion</u>

A. <u>Motion to Dismiss - Standard of Review</u>

The defendant has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6)

permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider the document in its determination. *See Pryor v. Nat'l*

*Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

**B. The Motion to Dismiss will be Granted.**

The plaintiffs assert their claims pursuant to § 1983 and state law, alleging that they were arrested and prosecuted for defiant trespass without probable cause. However, as we will explain, we conclude that Officer Wengen had probable cause to arrest the plaintiffs, and as such, their false arrest, false imprisonment, and malicious prosecution claims fail.

To state a claim for false arrest under § 1983, a plaintiff must plead facts to establish that he or she was arrested without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Meyers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Further, where the police lack probable cause for an arrest, "the

arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636.[1]

Section § 3503(b) of the Pennsylvania Crimes Code defines a defiant trespasser as a person who, "knowing that he is not licensed or privileged to do so, [ ] enters and remains in any place as to which notice against trespass is given by: . . . (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders[.]" 18 Pa. Cons. Stat. § 3503(b)(1)(ii). The statute provides a defense to prosecution if "the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." § 3503(c)(3). Here, the complaint avers that Mr. Kratz posted a notice on the building that stated the residence was unfit for human habitation. (Doc. 1 ¶ 21). The plaintiffs do not dispute that they knew the property was deemed uninhabitable; rather, they assert that Officer Wengen lacked probable cause to arrest them for defiant trespass

---

[1] Because the plaintiffs also assert their claims under Pennsylvania law, we note that state law claims for false arrest and false imprisonment require essentially the same showing as a claim brought under § 1983—an arrest without probable cause and an unlawful detention. *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (setting forth the elements for false arrest and false imprisonment claims under Pennsylvania law).

because he was told that Mr. Elbattah gave the plaintiffs permission to be present at the Carey Avenue property while he made repairs. For his part, Wengen asserts that notwithstanding Mr. Elbattah's alleged permission, he had probable cause to arrest the plaintiffs because Mr. Elbattah had no authority to override the City's closure of the property and authorize the plaintiffs to remain at the property.

Wengen attaches portions of the City's ordinance regarding code enforcement, which provides that "[i]nspection of premises and the issuing of orders in connection therewith, under the provisions of this article shall be the exclusive responsibility of the enforcement officer. . . . No order of correction of any violation under this article shall be issued without the approval of the enforcement officer[.]" (Doc. 12-1 at 4). The ordinance further states that the enforcement officer is responsible "to enforce the provisions of this article." (*Id.*). While the plaintiff contends that the ordinance constitutes extrinsic evidence that cannot be considered on a motion to dismiss, courts may consider "matters of public record" that are attached to a motion to dismiss. *Pension Benefit Guaranty Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Matters of public record include city ordinances. *See e.g.*,

*Diaz v. City of Passaic*, 2019 WL 6130773, at *4 (D.N.J. Nov. 19, 2019) (citing *Campbell v. Conroy*, 55 F. Supp. 3d 750, 754 n. 3 (W.D. Pa. 2014)). As such, we may consider the City ordinance in deciding the current motion.

Here, we conclude that Officer Wengen had probable cause to arrest the plaintiffs for defiant trespass. The complaint establishes that the plaintiffs knew that the building on Carey Avenue was closed because it was deemed uninhabitable by the code officer. The complaint further asserts that despite this knowledge, Ms. Soto "felt she could stay there because her apartment was being fixed." (Doc. 1 ¶ 43). However, because the City's ordinance permits only the enforcement officer to issue orders regarding premises, the fact that Mr. Elbattah allegedly gave the plaintiffs permission to be at the property does not negate the notice posted by the code officer that the building was uninhabitable. Accordingly, when Wengen arrived at the property on January 9, 2023, and was informed that the plaintiffs had been staying there despite the

building being closed, he had probable cause to believe that they committed the crime of defiant trespass.[2]

Relying on *Commonwealth v. Namack*, 663 A.2d 191 (Pa. Super. Ct. 1995), the plaintiffs contend that because Mr. Elbattah allegedly gave them permission to be at the property, they relied on a good faith but mistaken belief that they were entitled to be there, negating the *mens rea* element of defiant trespass. (Doc. 13 at 8-9). However, as the defendant correctly notes, the defendant in *Namack* presented evidence at a non-jury trial that he made a mistake of fact as to whether he was permitted to enter onto the property in question. *Namack*, 663 A.2d at 194-95. Thus, in reversing the defendant's conviction, the Superior Court held that "[w]hen evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt." *Id.* at 195.

---

[2] We are constrained to note that while the complaint asserts that Mr. Elbattah gave the plaintiffs permission to be present at the property while he performed repairs on January 9, 2023, the complaint also asserts that Officer Wengen was informed by a neighbor that the plaintiffs were staying at the property overnight. (Doc. 1 ¶ 33). These allegations further support a finding that the facts and circumstances available to Officer Wengen at the time of the plaintiffs' arrest established probable cause to believe they were committing the offense of defiant trespass.

Here, however, Wengen did not have to prove beyond a reasonable doubt that the plaintiffs had the requisite criminal intent in order to have probable cause for an arrest. Rather, it is well settled that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). Thus, "the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (citing *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime)). In the instant case, the facts and circumstances available to Wengen at the time he arrested the plaintiffs—that the plaintiffs were staying at the Carey Avenue property despite the property being closed by the City—were sufficient to establish probable cause that they were committing the offense of defiant trespass. Accordingly, we conclude that the plaintiff's false arrest and false imprisonment claims fail as a matter of law.

In a similar vein, we conclude that the plaintiffs have failed to state a claim for malicious prosecution. To state a claim for malicious

prosecution, the plaintiffs must allege facts to establish that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty[.]"[3] *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (citations omitted)). Here, as we have concluded with respect to the plaintiffs' false arrest claim, we conclude that the plaintiffs have failed to establish that Wengen initiated proceedings against them without probable cause. *See Langford v. Gloucester Twp. Police Dep't*, 787 F. App'x 120, 122 (3d Cir. 2019) ("Probable cause is a complete defense to false-arrest and malicious prosecution claims.").

Finally, we conclude that Officer Wengen is entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not

---

[3] The elements of a state law malicious prosecution claim are virtually identical to the elements of a § 1983 claim apart from the fifth element, which is not required under Pennsylvania law. *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 658 n.16 (W.D. Pa. 2010).

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). While generally a question of law to be decided at the earliest possible stage, "a genuine dispute of material fact on the issue of qualified immunity may preclude summary judgment." *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity is an affirmative defense that must be established by the official seeking immunity. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (citing *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled qualified immunity, a court must determine (1) whether the official violated a constitutional right, and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Pearson,* 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v.*

*Luna*, 577 U.S. 7, 11 (2015). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). Courts must not define the right "at a high level of generality." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the inquiry should focus on "whether the violative nature of particular conduct is clearly established." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742). Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The plaintiff bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 449 (3d Cir. 2020) (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d

136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020). However, in rare cases, the conduct may be clearly established from the obviously unlawful nature of the conduct "even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Here, where we have found that Officer Wengen had probable cause to arrest and charge the plaintiffs with defiant trespass, we cannot conclude that his conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. Accordingly, Officer Wengen is entitled to qualified immunity from these claims.

## IV.  Conclusion

For the foregoing reasons, the defendant's motions to dismiss (Doc. 11) will be GRANTED, and the complaint will be DISMISSED WITH PREJUDICE.

An appropriate order follows.

_s/ Daryl F. Bloom_
Daryl F. Bloom
United States Magistrate Judge